IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 4, 2016

### IN RE LA'TRIANNA W.[1]

**Appeal from the Juvenile Court for Knox County**
**No. 6013      Timothy E. Irwin, Judge**

_____

### No. E2016-01322-COA-R3-PT-FILED-DECEMBER 9, 2016

_____

This appeal involves the termination of a father's parental rights to his minor child. Following a bench trial, the trial court found that clear and convincing evidence existed to support the termination of his rights on the statutory ground of mental incompetence. The court further found that termination was in the best interest of the child. The father appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, P.J., M.S., and KENNY ARMSTRONG, J., joined.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Albert L. C.

Herbert H. Slatery, III, Attorney General and Reporter, and M. Cameron Hines, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

### OPINION

### I.      BACKGROUND

La'Trianna L. W. ("the Child") was born out of wedlock to La'Treese L. W. ("Mother") and Albert L. C. ("Father") in May 2012. Mother and Father (collectively "the Parents") have a lengthy history with the Tennessee Department of Children's Services ("DCS"). Mother received services from Helen Ross McNabb while pregnant

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

with the Child. DCS began providing in-home services after receiving the first report of harm regarding the Child in August 2013. Despite the use of in-home services, another report of harm was received by DCS in December 2013. The Child was finally removed from the home in March 2014. The Child has remained in foster care since that time and was adjudicated as dependent and neglected by agreed order due to environmental neglect and lack of supervision, domestic violence between the Parents, and Father's mental health issues and physical abuse of the Child.

Following removal, Father participated in supervised visitation on two occasions. Thereafter, DCS filed a motion to suspend visitation in which they alleged that the Child appeared "terrified" of Father and that she did not interact with him and cried hysterically during visitation. The court suspended visitation in April 2014. Approximately one year later, DCS sought termination of Father's parental rights based upon his mental incompetence and the persistence of conditions which led to removal. DCS also claimed that termination of his rights was in the best interest of the Child.

The hearing on the termination petition was held on July 23, 2015. Leeha Burke testified that she has worked as the Child's DCS case manager since removal. She recalled that Father was tasked with completing a psychological evaluation and a parenting assessment due to his alleged mental incompetence. She claimed that the evaluation and assessment revealed that he did not possess the mental capacity to parent a child. She agreed that he was compliant with mental health services and that he had maintained employment and housing. However, she claimed that he had not yet evidenced a significant change in his cognitive function or his ability to parent.

Ms. Burke testified that she was present for Father's visitation with the Child. She described him as "childlike" and stated that he interacted with the Child as a peer rather than as a parent. She stated that he was unprepared and fell asleep during visitation. She recalled that the Child began screaming and crying when she saw Father and tried to leave the visitation room.

Ms. Burke testified that Father had difficulty understanding his shortcomings as a parent. She explained that he understood that the home environment was unsanitary but that he never corrected the issue. She stated that he also admitted that he had difficulty controlling his temper and that he had physically abused the Child by shaking her on at least one occasion. She acknowledged that he was very cooperative with services and responsive to the requirements imposed upon him. She stated that she did remind him about appointments and meetings and that he was late on occasion.

Leigh Anne Goldstein, a licensed professional counselor, conducted Father's parenting assessment. She reviewed his mental health history and psychological

evaluation, met with him for a clinical interview, and observed a visit between him and the Child before forming her opinion. Her observations led her to believe that Father required a structured environment in order to assist him in managing his time. She believed that he was incompetent and simply unable to parent a child independently. She acknowledged that Father was compliant with services and that he openly discussed his mental health history. She explained that he recounted a prior investigation for sexual contact with a minor, his niece, in which he hallucinated that she was much older when she was actually a very young child.

Ms. Goldstein described Father as "childlike" and stated that he laughed while describing an incident in which he hit the Child because she interrupted him while playing a video game. She recalled that the Child initially cried and attempted to leave the room at the start of the visitation. She stated that Father then read a few books to her as she played by herself. She claimed that he later fell asleep several times and he failed to correct the Child when she climbed on the sofa.

DCS presented Father's psychological evaluation into evidence. The evaluation, conducted by William A. MacGillivray, PhD., revealed that Father is intellectually disabled[2] and suffered from a psychotic disorder, not otherwise specified; a depressive disorder, not otherwise specified; and an anxiety disorder, not otherwise specified. Dr. MacGillivray concluded as follows:

> [Father] clearly has intellectual limitations that suggest he would have difficulty coping with the complex challenges of raising a child and would likely need ongoing support and structure to assist him in these areas. He appears to be quite limited in coping skills and an assessment of daily living skills would be important to clarify whether he would be able to master even the ordinary tasks of childrearing without significant intervention.

He also believed that Father would need "to demonstrate stable functioning for a long period of time before he can be around [the Child] without supervision."

The foster mother testified that the Child has resided with her and her family for approximately 16 months. She recalled that the Child initially appeared shy and unable to express emotion. She asserted that the Child eventually grew into a happy, healthy and

---

[2] Our Supreme Court has urged the use of "intellectual disability" rather than "mentally retarded" or "mental retardation." *Keen v. State*, 398 S.W.3d 594, 600 n. 6 (Tenn. 2012); *In re Christopher S.*, No. E2012-02349-COA-R3-PT, 2013 WL 5436672, at *3 n. 1 (Tenn. Ct. App. Sept. 27, 2013). In deference to our Supreme Court, we have removed all references to retardation in this opinion.

confident three-year-old. She expressed a desire to adopt the Child if she were to become available for adoption.

Father testified that he did not want to lose his parental rights to the Child. He acknowledged that he would require some assistance in parenting the Child if she were returned but claimed that he would not always need assistance. He stated that he was regularly taking medication to address his mental health issues but acknowledged that his current medication caused drowsiness. He stated that he only experienced hallucinations when he was unable to take his medication. He explained that he physically abused the Child because the medication he was prescribed at that time did not work.

Following the hearing, the trial court found clear and convincing evidence to support termination based upon Father's mental incompetence. The court also found clear and convincing evidence that termination of Father's parental rights was in the best interest of the Child.[3] This appeal followed.

## II.    ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.    Whether this court has jurisdiction to hear this appeal.

B.    Whether clear and convincing evidence supports the trial court's termination of Father's rights based upon his mental incompetence pursuant to Tennessee Code Annotated section 36-1-113(g)(8).[4]

C.    Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

---

[3]The court also terminated Mother's parental rights. Her parental rights are not at issue in this appeal.

[4]Father also claims that the record does not support termination based upon the persistence of conditions which led to removal. We will not address this issue because our review of the record reveals that the court did not rely upon this ground in terminating Father's parental rights.

- 4 -

# III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1)     [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2)     [t]hat termination of the parent's or guardian's rights is in the best interest [] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App.

Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, -- S.W.3d --, No. M2014-00453-SC-R11-PT, 2016 WL 819593, at *12 (Tenn. Jan. 29, 2016) (internal citations omitted).

## IV.    DISCUSSION

### A.

DCS requests dismissal of the appeal because the notice of appeal was not filed with the proper court within the 30-day time limit for filing such appeals. A notice of appeal must "be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). "The thirty-day time limit for filing a notice of appeal is mandatory and jurisdictional in civil cases." *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004). This court is not at liberty to waive the untimely filing of a notice of appeal. Tenn. R. App. P. 2.

Here, the hearing on the termination petition occurred on July 23, 2015, after which the court issued a ruling ordering the termination of Father's parental rights. Father filed a notice of appeal with the clerk of the Knox County Juvenile Court. The notice was stamped as received by the clerk on August 18, 2015.[5] The notice of appeal was then erroneously sent to the clerk of the Fourth Circuit Court because Father indicated that he sought review of the termination finding *and* the dependency and neglect finding. This error was not discovered until March 31, 2016, after which the Fourth Circuit Court transferred the matter to this court. While the time for filing such appeals had passed, the notice of appeal was filed with and received by the appropriate trial court clerk within 30 days of the filing of the entry of the judgment appealed from. Accordingly, we deny DCS's request to dismiss the appeal.

B.

Under Tennessee law, a court may terminate parental rights when clear and convincing evidence is provided to establish that:

> (i)  The parent . . . of the child is incompetent to adequately provide for the further care and supervision of the child because the parent's . . . mental condition is presently so impaired and is so likely to remain so that it is unlikely that the parent . . . will be able to assume or resume the care of and responsibility for the child in the near future; and

> (ii)  That termination of parental . . . rights is in the best interest of the child[.]

Tenn. Code Ann. § 36-1-113(g)(8)(B). DCS bears the burden of demonstrating "by clear and convincing evidence both that [the parent] is presently unable to care for the [child] and that it is unlikely that [the parent] will be able to do so in the near future." *In re Keisheal*, No. M2012-01108-COA-R3-PT, 2013 WL 440061, at *7 (Tenn. Ct. App. Feb. 4, 2013) (citing Tenn. Code Ann. § 36-1-113(g)(8)). The statute also expressly provides that no finding of willfulness is required to establish this ground. Tenn. Code Ann. § 36-1-113(g)(8)(C).

The record reflects that Father suffered from an intellectual disability and a psychotic disorder, not otherwise specified. While he has been cooperative with services, he has not evidenced the ability to parent the Child now or in the near future. With these considerations in mind, we conclude that DCS proved by clear and convincing evidence

---

[5] The court did not issue its final order until September 22, 2015. Thus, Father's notice of appeal should be treated as if filed on that day. *See* Tenn. R. App. P. 4(d). ("A prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof.").

that Father is (1) presently incompetent to adequately provide for the care and supervision of the Child because of mental impairment and (2) such mental impairment is so likely to remain that it is unlikely that he will be able to resume care or responsibility for the Child in the near future. Accordingly, a statutory ground supported the termination of Father's parental rights.

## C.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground to terminate Father's parental rights, we must consider whether termination was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[6]

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or

---

[6] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

A number of the best interest factors weigh against Father. He had not made the adjustment of circumstances necessary to make it safe and in the Child's best interest to return home. Indeed, the record reflects that Father failed to correct the unsanitary living conditions in his home. Tenn. Code Ann. § 36-1-113(i)(1). Having reviewed the evidence, we conclude that DCS expended reasonable efforts in attempting to assist him but that he was simply unable to make a lasting adjustment. Tenn. Code Ann. § 36-1-113(i)(2). While Father's visitation was suspended, the record reflects that a meaningful relationship was not otherwise established between him and the Child. Tenn. Code Ann. § 36-1-113(i)(4). The Child resides in a safe and stable foster home that is willing and able to adopt her. Removing her would negatively affect her emotional condition. Tenn. Code Ann. § 36-1-113(i)(5). Father has shown physical abuse toward the Child. Tenn. Code Ann. § 36-1-113(i)(6). Questions remain as to whether Father's mental status

would prevent him from providing appropriate care when the medication necessary to treat his psychotic disorder renders him unable to parent independently. Tenn. Code Ann. § 36-1-113(i)(8).

While we acknowledge Father's desire to maintain his biological connection with the Child, she has simply languished in custody for far too long and should be allowed to achieve permanency and stability in her current placement. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child. We affirm the decision of the trial court.

## V. CONCLUSION

This judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. In that, the appellant has filed an affidavit of indigency in the Juvenile Court of Knox County and his intellectual disability appears to be profound to the point that he is unable to maintain employment and bear the costs of this appeal, the costs of this appeal are hereby taxed to the Department of Children's Services.

_____
JOHN W. McCLARTY, JUDGE