**In the Matter of A.D.A.**

Court of Appeals of Tennessee, at Jackson.

Jan. 24, 2002.

Application for Permission to Appeal Denied by Supreme Court May 28, 2002.

William S. Rhea, Somerville, Tennessee, for the appellant, K.R.A.

Paul G. Summers, Attorney General and Reporter; and Elizabeth C. Driver, Assistant Attorney General, for the appellee State of Tennessee, Department of Children's Services.

## OPINION

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Mother's parental rights were terminated by the Juvenile Court of Fayette County upon the court's finding of abandonment, substantial non-compliance with a permanency plan, and removal of the child from the home by court order for over six months with accompanying circumstances as delineated in the Tennessee Code. We reverse the finding of willful abandonment, but affirm termination of parental rights.

This is an appeal of a May 2001 order of the Juvenile Court of Fayette County terminating the parental rights of K.R.A. ("Mother") to her minor son ("A.D.A."), who is now four years old and in the custody of the Department of Children's Services ("DCS").[1]  A.D.A. was born on November 15, 1997.  In March of 1998, he was placed in the custody of his maternal grandfather.  While in his grandfather's custody, A.D.A. suffered a head injury causing permanent injury.  DCS sought and received a protective custody order in March of 1999, after the court found him to be a dependent and neglected child. Upon finding A.D.A. to be dependent and neglected, having sustained an injury as a result of abuse or neglect, and that foster care would be in his best interest, custody was awarded to DCS in July of 1999.  The State petitioned for termination of Mother's parental rights in October of 2000.

The court below granted the petition following a hearing in April of 2001, and this appeal ensued.  In ordering termination of mother's parental rights, the court found:

1.  That Respondent, [K.R.A.], has willfully abandoned the child, [A.D.A.], for more than four (4) consecutive months immediately preceding the filing of the Petition in that Respondent has failed to visit said child/ren [sic] since June, 2000, and has willfully failed to support or make reasonable payments toward the support of said child.

2.  That [K.R.A.] has abandoned said child in that the child has been removed from the parents as a result of a petition filed in the Juvenile Court in which the child was found to be dependent and neglected, as defined in § 37–1–102, and that the child was placed in the custody of the department; the Juvenile Court found, that the department made reasonable efforts to prevent the removal of the child; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent to establish a suitable home for the child, but that the parent have [sic] made no reasonable efforts to provide a suitable home and has demonstrated a lack of concern for the child to such a degree that it appears unlikely that she will be able to provide a suitable home for the child at an early date.

3.  That the child has been removed from the home of [K.R.A.] by order of a court for a period of six (6) months and:

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected

---

1.  The Father's parental rights were terminated by default judgment on December 18, 2000, and are not a subject of this appeal.

to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent, still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent in the near future; and

(iii) The continuation of the parent and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

4. That there has been substantial noncompliance by the Respondent [K.R.A.] with her statements of responsibilities in the plan for foster care pursuant to the provisions of title 37, chapter 2, part 4, Tennessee Code Annotated.

5. That it is, therefore, in the best interest of the said child and the public that all of the parental rights which [K.R.A.] may have to the said child be forever terminated and that the ·complete custody, control, guardianship of the said child should [now be] awarded to the Tennessee Department of Children's Services, with the right to place said child for adoption and to consent to such adoption *in loco parentis* . . .

A.D.A. is currently in foster care through the Stepping Stones program, a private agency contracted by the State to provide care to medically fragile children in State custody. As a result of the head injury sustained in 1999, he is partially blind and requires a shunt to draw fluid from his brain. A.D.A. requires vigilant and constant care, as the shunt can and has malfunctioned, resulting in a life threatening situation requiring emergency surgery.

It is undisputed that Mother is a crack cocaine addict whose addiction began before A.D.A.'s birth. In addition to A.D.A.,

Mother has four other children who ranged in ages from nine to two at the time of the hearing. These children also have been removed from Mother's custody and are in the custody of her father. At the time of the hearing, mother was unemployed, had worked for one month in 2000, and for approximately four months in 1999.

### Issues

Mother presents the following issues for review on appeal:

I. Whether the trial court errer [sic] in finding that [K.R.A.] willfully abandoned [A.D.A.] as pursuant to T.C.A. 37–1–102 and 36–1–102.

II. Whether the trial court erred in finding [K.R.A.] to be in substantial noncompliance with the plan for permanency as pursuant to T.C.A. 37–2–4[sic].

### Standard of Review

In a nonjury trial, our standard of review is *de novo* upon the record. *See Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn.1995). There is a presumption of correctness as to the trial court's findings, unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d). With respect to the trial court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000); Tenn. R.App. P. 13(d). In reviewing termination decisions, this court has recognized that the existence of any one of the statutory bases will support a termination of parental rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn.Ct. App.2000). We must affirm the trial court's judgment terminating Mother's parental rights if the record contains clear and convincing evidence to support any of the bases found by the trial court. *Id.*

### Discussion

We begin our analysis with the well-established premise that "[a] parent has a fundamental right to the care, custody and control of his or her child." *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Since this is a fundamental but not absolute right, both "[t]he federal and state constitutions require the opportunity for an individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." *In re Swanson,* 2 S.W.3d 180, 188 (Tenn.1999). A parent's right to the care, custody, and control of his or her child may be terminated if clear and convincing evidence justifies such termination under the applicable statute. *Santosky v. Kramer,* 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In describing what constitutes clear and convincing evidence, this Court has stated:

> Although it does not require as much certainty as the "beyond a reasonable doubt" standard, the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard. *O'Daniel v. Messier,* 905 S.W.2d 182, 188 (Tenn.App.1995); *Brandon v. Wright,* 838 S.W.2d 532, 536 (Tenn.App.1992). In order to be clear and convincing, evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 n. 3 (Tenn.1992); *O'Daniel v. Messier,* 905 S.W.2d at 188. Such evidence should produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established. *O'Daniel v. Messier,* 905 S.W.2d at 188; *Wiltcher v. Bradley,* 708 S.W.2d 407, 411 (Tenn.App.1985). In contrast to the preponderance of the evidence standard,

clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. *Lettner v. Plummer,* 559 S.W.2d 785, 787 (Tenn.1977); *Goldsmith v. Roberts,* 622 S.W.2d 438, 441 (Tenn.App.1981); *Brandon v. Wright,* 838 S.W.2d at 536.

*In re C.W.W.,* 37 S.W.3d at 474 (citations omitted).

Once the court has found by clear and convincing evidence that the statutory criteria for termination have been met, the court additionally must find that termination of the parent's rights is in the child's best interest. *See* Tenn.Code Ann. § 36–1–113(c)(2) (2001). In making this best-interest determination, the trial court is required to consider, *inter alia,* the following factors:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physi-

cal, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by [DCS] pursuant to § 36–5–101.

Tenn.Code Ann. § 36–1–113(i) (2001).

In the present case, the trial court terminated Mother's parental rights pursuant to the provisions of Tenn.Code Ann. 36–1–113(g). In pertinent part, this statute provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

(1) Abandonment by the parent or guardian, as defined in § 36–1–102, has occurred;

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent, still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardians in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn.Code Ann. § 36–1–113(g)(1)–(3)(2001).

As noted above, the trial court found by clear and convincing evidence that Mother's parental rights should be terminated pursuant to all three of these statutory criteria, and further found that termination of Mother's parental rights would be in A.D.A.'s best interest.

We note as an initial matter that Mother does not raise specifically the trial court's findings regarding § 36–1–113(g)(3)(A) as an issue upon appeal. Uncontested, this finding provides sufficient grounds to terminate Mother's rights. This Court is satisfied, however, that the issue is presented within the context of counsel's brief, and we will therefore consider it upon appeal.

### *Abandonment*

The Tennessee code, in pertinent part, defines abandonment as:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of

parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;

(ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37–1–102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date.

Tenn.Code Ann § 36–1–102(1)(A)(i)(ii)(2001).

■ The Tennessee Supreme Court has held that a constitutionally sound finding of abandonment under § 102(1)(A)(i) requires a finding that the parent intentionally failed to support or visit his/her child. *See In re Swanson,* 2 S.W.3d at 188. In the present case, it is undisputed that Mother's efforts to visit her child were substantially hampered by her lack of access to transportation. Mother does not

own a car, and is dependent primarily upon her father, who works over sixty hours a week, for transportation. As a result of his medical needs, A.D.A. was placed in foster care in Obion County, more than two hours away from Mother's home in Fayette County. Although the State agreed to bring A.D.A. as far as Covington to visit with his mother, we note that this is still over an hour's drive from Mother's home. Mother also testified as to occasions wherein she would make arrangements to visit A.D.A., and later have the visit cancelled by the foster family. We further note that the State's petition was filed in October of 2000, and that Mother spent July of 2000 in a voluntary drug rehabilitation in-patient program. We are satisfied that Mother's attempt to address her drug addiction during at least part of the four month period immediately preceding the State's petition undermines a finding of intent as to her lack of visitation with A.D.A. Read as a whole, including the testimony of the guardian ad litem, who stated that Mother has done a lot "for her," considering her condition and situation, the record in this case does not support a finding by clear and convincing evidence of intentional abandonment under Tenn.Code Ann § 36–1–102(1)(A)(i) for the purposes of forever terminating Mother's parental rights. We therefore reverse the trial court's finding on this issue.

■ Regarding the finding of abandonment pursuant to Tenn.Code Ann § 36–1–102(1)(A)(ii), it is undisputed that at the time of trial A.D.A. had been in the State's custody for over six months and that Mother was still using crack cocaine as of December 2000. Although Mother voluntarily spent July of 2000 in an in-patient drug rehabilitation program, she failed to complete the six-month program which was recommended and offered to her. Mother testified that she left the program

after only one month because she thought she was "fixed." We note that approximately nine months passed between the time Mother left the rehabilitation program and the date of the April 2001 trial, and that Mother did not re-enter the in-patient program after discovering that she remained addicted to crack cocaine. Although there was testimony that Mother "seemed better" at the time of trial than she had been in the summer of 2000, and that she had re-entered counseling in December of 2000, Mother attended only one counseling session between December 2000 and March of 2001. Mother spent approximately 31 days of this period in incarceration in Mississippi.

We agree with the testimony presented by the State that a suitable home requires more than a physical space. A.D.A. is a child with permanent injuries who requires constant care. For him, a suitable home requires the presence of a care giver who can supply the care and attention he needs. By her own admission, Mother is not currently that person. We recognize that Mother is not seeking custody of A.D.A. at this time. We also recognize, however, that it is unlikely that A.D.A. can return to his Mother's home at any time in the near future. Mother's failure to take advantage of every opportunity offered to her to overcome her drug addiction evidences a lack of concern for her child such that it is unlikely that A.D.A. can be returned to her care in the near future.

This Court has held that the inability of a parent to overcome a drug addiction can provide statutory grounds for the termination of parental rights. *See State v. Hunter*, No. M1999–02606–COA–R3–CV, 2000 WL 313549, at *3–4 (Tenn.Ct.App. Mar. 29, 2000)(*no perm. app. filed*). As in *Hunter*, Mother's inability to make this fundamental change justifies the termination of parental rights, particularly given the extraordinary needs of A.D.A. *See id.* at *4. We therefore affirm the trial court on this issue.

## Compliance with the Permanency Plan

As noted above, Mother's parental rights may be terminated upon a finding by clear and convincing evidence of "substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4." Tenn.Code Ann. 36–1–113(g)(2). Mother asserts that while there has been some noncompliance with her permanency plan, it has not risen to the degree of substantial noncompliance. Mother argues in her brief that "[s]ince the spring of 2001, [she] has been to all of her meetings and nearly completed everything the State has asked her to do."

■ This Court is not unsympathetic to Mother's efforts. However, upon review of the record, we are satisfied that at the time of trial there was clear and convincing evidence to support a finding of substantial noncompliance. Mother had three years from the time she lost custody of A.D.A. until the April 2001 hearing to comply with the permanency plan, the most important element being to break her addiction to crack cocaine. As previously noted, Mother had remained addicted to crack cocaine as of the April hearing, was unemployed and was not trained in how to care for A.D.A. In her brief, Mother asks this Court to consider the efforts she has made since the April 2001 hearing to comply with the permanency plan. We are sympathetic to Mother's request, however, review by this Court of the proceeding below is limited to the record. Tenn. R.App. P. 24(g). We accordingly affirm the trial court on this issue.

### Removal From Home for Over Six Months and Requisite Attendant Circumstances

█ It is undisputed that at the time of the April 2001 hearing, A.D.A. had been found by the court to be a dependent and neglected child and had been removed from Mother's custody for over six months. Our review of the record reveals clear and convincing evidence that as of the hearing date the conditions which led to A.D.A.'s removal still persisted, and that there was little likelihood of remedy such that A.D.A. could be safely returned to Mother in the near future. As of the April 2001 hearing, over three years had passed since Mother had custody of A.D.A., and A.D.A. had been in State custody for over two years. Mother remained addicted to cocaine and was unemployed for all but a few months of this time. It is axiomatic, moreover, that there is no realistic possibility that A.D.A. can be integrated into a permanent home absent the termination of Mother's parental rights. We therefore affirm on this issue.

### Best Interest of the Child

Considering the factors listed in Tenn. Code Ann. § 36–1–113(i) and noted above, we affirm the trial court's finding that termination of Mother's parental rights is in the best interest of A.D.A.

In light of the foregoing, the trial court is affirmed. Costs of this appeal are taxed to the appellant, [K.R.A.], and her surety, for which execution may issue if necessary.