

FILED

05/12/2017

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs April 3, 2017

## IN RE: WESLEY P.

### Direct Appeal from the Chancery Court for Weakley County
### No. 23320     W. Michael Maloan, Chancellor

_____

### No. W2016-02131-COA-R3-PT

_____

This is the second appeal regarding the termination of Father's parental rights with respect to this child. On October 22, 2014, the trial court entered an order terminating both Mother's and Father's rights to their son based on a finding of severe abuse and a determination that it was in the child's best interest that both parents' rights be terminated. Mother and Father appealed that determination to this Court. On May 29, 2015, this Court issued an opinion, *In re Wesley P.*, No. W2014-02246-COA-R3-PT, 2015 WL 3430090 (Tenn. Ct. App. May 29, 2015), affirming the trial court's finding of severe abuse but reversing the termination of parental rights on the basis that it was not in the best interest of the child to do so at that time. On January 12, 2016, DCS filed another petition to terminate Mother's and Father's parental rights, alleging several grounds for termination. Mother subsequently surrendered her parental rights to the child voluntarily, and her rights are not subject to this appeal. After a full hearing, the chancery court found by clear and convincing evidence that all grounds for termination alleged against Father existed and that termination of Father's parental rights was in the best interest of the child. Father appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which RICHARD H. DINKINS and THOMAS R. FRIERSON, II, JJ., joined.

Anthony L. Clark, Paris, Tennessee, for the appellant, Father.[1]

_____

[1] In cases involving a minor child, it is this Court's policy to redact names in order to protect the child's identity. In this case, in order to preserve both clarity and the anonymity of the child, we will redact the names of individuals sharing the child's surname and will refer to those individuals as "Father" and "Mother".

Herbert H. Slatery III, Attorney General and Reporter, and Ellison M. Berryhill, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Appellant ("Father") is the biological father of Wesley P., born July 2006 (the "Child"). The Child was first removed from the custody of his biological mother ("Mother")[2] and Father in April 2011 because the Department of Children's Services ("DCS") determined that the use and manufacturing of methamphetamine was taking place in the family's home. Both parents and the Child subsequently tested positive for methamphetamine. On October 4, 2011, the juvenile court entered an agreed order adjudicating the Child dependent and neglected and severely abused based on Mother's and Father's stipulations of the same. The Child was restored to Mother's and Father's custody on April 17, 2012.

In 2013, DCS received another referral alleging that parents were again manufacturing methamphetamine in their home. After a visit to parents' home, DCS filed a petition with juvenile court on April 29, 2013, requesting the court to order Mother and Father to comply with a non-custodial permanency plan. Mother and the Child submitted to hair follicle drug tests in March 2013, and both tested positive for methamphetamines. DCS then filed an amended petition on May 31, 2013, alleging that there had been substantial non-compliance with the non-custodial permanency plan, and that the Child should therefore be removed from Mother's and Father's custody and placed in the custody of DCS. That same day, an *ex parte* order of protective custody was entered, and the Child was placed into the custody of DCS.

After the Child was removed from the parents' home on May 31, 2013, a permanency plan was developed on June 20, 2013. The goal of this plan was for the parents to provide the Child with a safe and drug-free home, and Father signed in agreement with this plan. Thereafter, Mother and Father continued to cohabitate while Mother attempted to achieve sobriety, and they eventually married during the pendency of the juvenile court proceedings. On July 19, 2013, DCS filed a petition in chancery court to terminate Mother's and Father's parental rights to the Child on the sole ground of severe abuse. On December 9, 2013, the Child's permanency plan was revised and the goal of the plan was changed to adoption. The plan listed as desired outcomes for Father to maintain sobriety and once again to establish and maintain a safe and drug-free home.

---

[2]Mother has voluntarily surrendered her parental rights to the Child on August 12, 2016, and she is not a party to this appeal.

In order to achieve those outcomes, the plan required Father to pay twenty-five dollars ($25.00) per month in child support, visit regularly with the Child, cooperate with and participate in in-home and supervised visitation services, complete and pass a hair follicle drug screen and other random drug screens, and to attend alcoholics anonymous/narcotics anonymous meetings and follow their recommendations. The plan was again revised on June 2, 2014, and generally reiterated the same requirements of Father set forth in the prior plans. Father admitted that he again used methamphetamine in August 2014. In all, approximately nine (9) permanency plans have been developed during the course of this case.

The hearing on the initial petition to terminate Mother and Father's parental rights to the child was held on September 18, 2014. The chancery court found that the parents had severely abused the Child in 2011 based on their stipulation to said abuse. Further, the court found that the parents again severely abused the Child in 2013 when the Child ingested methamphetamine and Mother was using methamphetamine in the presence of the Child in a structure where the manufacture of methamphetamine was occurring. Ultimately, the chancery court held that DCS had proven the ground of severe abuse and that termination of Mother's and Father's parental rights was in the best interest of the Child. Mother and Father appealed the chancery court's termination of their parental rights. On May 29, 2015, this Court issued an opinion affirming the finding that the Child was severely abused by the parents, but held that terminating Mother's and Father's parental rights was not in the best interest of the Child at that time. *See In re Wesley P.*, No. W2014-02246-COA-R3-PT, 2015 WL 3430090 (Tenn. Ct. App. May 29, 2015). After their parental rights were reinstated, Mother and Father resumed visitation with the Child, and DCS included them in the Child's permanency plans once again.

On January 12, 2016, DCS filed a second petition to terminate Mother's and Father's parental rights to the Child, which is the petition subject to this appeal (the "Petition"). Mother voluntarily surrendered her parental rights to the Child before the Petition was heard. The Petition alleged the following grounds for termination of Father's rights to the Child: abandonment by an incarcerated parent; abandonment by failure to provide a suitable home; substantial noncompliance with permanency plans; persistent conditions; and severe child abuse. DCS further alleged that terminating Father's parental rights was in the Child's best interest. The hearing on the Petition against Father was held on August 12, 2016. Father was incarcerated on charges unrelated to the Child at the time the Petition was filed and throughout the pendency of the proceedings. On September 13, 2016, the trial court entered an order terminating Father's parental rights to the Child based on findings that DCS had proven each of the alleged grounds for termination by clear and convincing evidence and that termination was in the best interest of the Child. Father timely appealed to this Court.

## II. ISSUES PRESENTED

Father presents the following issues for review on appeal:

1.      Whether the trial court erred in finding by clear and convincing evidence that Appellant abandoned the minor child by his incarceration?

2.      Whether the trial court erred in finding by clear and convincing evidence that Appellant abandoned the minor child by failing to provide a suitable home for minor child?

3.      Whether the trial court erred in finding by clear and convincing evidence that Appellant committed substantial non-compliance with family permanency plans?

4.      Whether the trial court erred in finding by clear and convincing evidence that persistent conditions exist as grounds for termination of Appellant's parental rights?

5.      Whether the trial court erred in finding by clear and convincing evidence that severe abuse exists as grounds for termination of Appellant's parental rights?

6.      Whether the trial court erred in finding by clear and convincing evidence that termination of the Appellant's parental rights is in the best interest of the minor child?

## III. STANDARD OF REVIEW

In Tennessee, proceedings to terminate a parent's parental rights are governed by statute. *In re Kaliyah S.*, 455 S.W.3d 533, 541 (Tenn. 2015). Tennessee Code Annotated section 36-1-113 sets forth the grounds and procedures for terminating the parental rights of a biological parent. *Id.* at 546. Pursuant to the statute, parties who have standing to seek termination of a biological parent's parental rights must prove two elements. *Id.* at 552. First, they must prove the existence of at least one of the statutory grounds for termination listed in Tennessee Code Annotated section 36-1-113. *Id.* Second, the petitioner must prove that terminating parental rights is in the child's best interest, considering, among other things, the factors listed in Tennessee Code Annotated section 36-1-113(i). *Id.* In light of the constitutional dimension of the rights at stake in a termination proceeding, the persons seeking to terminate parental rights must prove both of these elements by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586,

4

596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). "Clear and convincing evidence" has been defined as "'evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013) (quoting *In re Valentine*, 79 S.W.3d at 546). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d at 596.

In sum, in order to terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Adoption of Angela E.*, 402 S.W.3d at 639. Because of this heightened burden of proof in parental termination cases, on appeal we must adapt our customary standard of review as set forth in Tennessee Rule of Appellate Procedure 13(d). *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005). First, we review each of the trial court's specific factual findings *de novo* in accordance with Rule 13(d), presuming the finding to be correct unless the evidence preponderates against it. *In re Adoption of Angela E.*, 402 S.W.3d at 639. Second, we must make our own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d 483, 524 (Tenn. 2016)(citing *In re Bernard T.*, 319 S.W.3d at 596-97). "The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness." *Id.* (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)).

## IV. DISCUSSION

### A. Grounds for Termination

1. Abandonment by an Incarcerated Parent

The trial court found that Father's conduct meets the definition of abandonment by an incarcerated parent as provided in Tennessee Code Annotated section 36-1-102(1)(A)(iv), which states as follows:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4)

months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to the incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv). As an initial matter, Father does not dispute his periods of incarceration. Most recently, he has been incarcerated in the Carroll County Jail since September 18, 2015 on charges of burglary and theft of property.[3] The proceedings to terminate his parental rights were instituted on January 12, 2016, putting Father's incarceration squarely within the definition of Tennessee Code Annotated section 36-1-102(1)(A)(iv).

Furthermore, the trial court found that Father "willfully failed to pay child support as he stated he did not pay because he did not think the child should have been removed from his custody." On appeal, Father concedes the following:

Appellant paid no child support during the period the minor child has been in the custody of DCS in spite of permanency plans. Appellant did so because he felt his child had been wrongfully removed from his custody. Appellant testified to his income in 2015 of $400/month and utility expenses of $50-$60/month. Appellant denied employment with the company he had previously told DCS workers he was employed. The trial court found Appellant was not a credible witness.

On appeal, Father alleges that the court erred in finding that he has abandoned his Child pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv). However, we are not able to discern any argument Father makes to dispute the trial's determination that he "willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding" his incarceration. Based on Father's own factual admissions and his failure to cite any applicable law or argument on the issue, we affirm the chancery court's finding that Father willfully failed to support the Child as set forth in Tennessee Code Annotated section 36-1-102(1)(A)(iv).

The trial court further concluded that Father engaged in "conduct that exhibited a

---

[3]The record appears to indicate that Father is also incarcerated on additional charges in Carroll County, but it is not entirely clear on appeal what Father was arrested for on September 18, 2015 other than burglary and theft of property.

wanton disregard for the safety and welfare" of the Child. According to the trial court:

> [Father] has been incarcerated multiple times during the course of the child's life, he admittedly made methamphetamine in the family home at one time and was even arrested for it, he has severely abused the child twice, and just prior to his most recent incarceration was evading arrest on multiple charges for at least 8 months.

Again, Father does not attempt to dispute his periods of incarceration. At the time of the filing of these termination proceedings, Father also had outstanding charges of probation violations in both Tennessee and Kentucky. Father was on probation in Kentucky for possession of methamphetamine and in Tennessee for reckless endangerment. At trial, Father admitted that he was aware of the outstanding warrants for his arrest for at least eight (8) months before he was arrested,[4] but he had been actively trying to avoid arrest in order to try to regain custody of the Child. The chancery court also found the following:

> When asked about his incarceration history [Father] only recalled being incarcerated and/or arrested 4 times since 2005. Those were in 2005 in Kentucky for the methamphetamine charge already mentioned, in April 2011 for the methamphetamine charges already discussed, in May of 2013 for aggravated child neglect which was pled down to reckless endangerment and for his current incarceration. However, after discussion of his prior testimony he did also recall being arrested in August of 2013 for theft and burglary, in October of 2013, and in March of 2014 for driving on [a] revoked [license].

"We have repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of the child." *In re Audrey S.*, 182 S.W.3d 838, 867-68 (Tenn. Ct. App. 2005). These behaviors do not have to have occurred within a specific time period, and a court may look beyond the four (4) months immediately preceding the parent's incarceration. *Id.* We conclude that the evidence does not preponderate against the trial court's factual findings on this issue, and the record is indicative of Father's patterns of criminal behavior, drug abuse, incarceration, and refusal to financially support the Child, which amount to a wanton disregard for the welfare of the Child. This ground for termination has been established by clear and convincing evidence.

---

[4]Father initially testified that he turned himself over to authorities on September 18, 2015, but eventually admitted he was arrested.

7

2. <u>Abandonment for Failure to Provide a Suitable Home</u>

The chancery court found that DCS also carried its burden of proof with regard to Father's abandonment of the Child for failure to provide a suitable home pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(ii).[5] The court held as follows:

> [P]ursuant to Tennessee Code Annotated section 36-1-113(g)(1), the Court concludes and finds that grounds for Termination of Parental Rights do exist against [Father], by clear and convincing evidence, based on abandonment by the parent or guardian due to failure to provide a suitable home as defined in Tennessee Code Annotated section 36-1-102, because the child was removed in a D&N proceeding and placed in custody of the Department; the juvenile court found that the situation prevented reasonable efforts from being made; because of the prior severe abuse finding, [which Father] stipulated to, the Department was excused from making reasonable efforts with [Father]; [Father] did not make reasonable efforts to provide such home and demonstrated such a lack of concern for the child to such a degree it appears unlikely to provide such home at any early date in that even after the child was removed from [Father] he failed to accept any responsibility for why the child was removed, failed to acknowledge he had substance abuse issues, and continued to remain in the home with the child's mother who had an addiction to methamphetamine and at that time was not in treatment. . . .

On appeal, Father asserts that the trial court erred in finding that he failed to

---

[5]Parental rights may be terminated when

> (ii) The child has been removed from the home of the parent or parents or the guardian or guardians as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent or parents or the guardian or guardians to establish a suitable home for the child, but that the parent or parents or the guardian or guardians have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date.

Tenn. Code Ann. § 36-1-102(1)(A)(ii).

provide the Child a suitable home because "the record contains no evidence, other than that of exposure to methamphetamine in 2011, that Appellant failed to provide a suitable home for his son. DCS provided no evidence of any long-term physical effects of the child's exposure to methamphetamine." Father also contends that there is no evidence that he did not properly clothe or feed the Child and that there is no evidence that he mentally or psychologically abused the Child. In sum, Father argues that there is no evidence that the "child was not well-cared for prior to his removal, with the exception of his exposure to methamphetamine once in 2011."

However, we cannot agree with Father that clothing and feeding the Child is the benchmark by which we must judge whether Father has established a suitable home. This Court has held that "a suitable home requires more than a physical space" and that it "requires the presence of a care giver who can supply the care and attention" a child needs. *In re A.D.A.,* 84 S.W.3d 592, 599 (Tenn. Ct. App. 2002). We have also held that a suitable home is a home that is free from drugs and domestic violence. *State v. C.W.*, No E2007-00561-COA-R3-PT, 2007 WL 4207941, at *3 (Tenn. Ct. App. Nov. 29, 2007). Father concedes the "serious nature" of his current incarceration. Further, there is no dispute that when Father is released from his current incarceration, he will have to address legal issues in Kentucky regarding his parole violation there. In our view of the record, Father has failed to take reasonable steps to make lasting changes in his lifestyle or conduct in a way that would allow him to provide the Child with a suitable home. We agree with the chancery court that Father has demonstrated such a lack of concern for the Child that it appears unlikely that he will be able to provide a suitable home for the child at an early date, and we affirm termination on this ground.

3. Substantial Noncompliance with Permanency Plan

A court may terminate a parent's parental rights when the parent is in "substantial noncompliance . . . with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). In terminating parental rights under this ground, the court "must first find that the plan requirements are reasonable and related to conditions that necessitate foster care placement." *In re Hannah H.,* No. E2013-01211-COA-R3-PT, 2014 WL 2587397, at *10 (Tenn. Ct. App. June 10, 2014). "The trial court must then find that the noncompliance is substantial." *Id.* (citation omitted). Although the termination statute does not define what conduct constitutes substantial noncompliance, the significance of the noncompliance "should be measured by both the degree of noncompliance and the weight assigned to that requirement." *In re Valentine,* 79 S.W.3d at 548. Because determining whether substantial noncompliance exists is a question of law, we review the issue de novo with no presumption of correctness. *Id.* at 548.

9

As we have previously stated, several permanency plans were created in this case that contained action steps for Father to complete. While the plans varied slightly, in general Father was required to pay some amount of child support for the Child, regularly visit with the Child, work with counseling and in-home services and follow their recommendations, complete and pass drug screens, take an alcohol and drug assessment and follow the recommendations of his counselor, and to avoid additional legal troubles, including following the rules of his probation. The chancery court found, and we agree, that these requirements of Father's permanency plans were reasonably related to remedying the reason that the Child was initially removed from the home, which stemmed from illegal drug use and manufacturing in the family home.

On appeal, Father does not contend that he fully complied with the permanency plans but rather that his non-compliance was not *substantial* non-compliance. Father asserts that he has shown "reasonable compliance" with the permanency plans by completing drug screens, going to narcotics anonymous/ alcoholics anonymous meetings, only refusing to pay child support out of principle, and maintaining as loving of a relationship with his Child as far as his circumstances would allow. On the other hand, the record shows that, regardless of his reasoning, Father refused to pay any child support for the Child, his last visitation with the Child was in September 2015 due to his incarceration, Father only took three (3) out of the nine (9) drug tests that were requested of him, he failed two (2) out of the three (3) drug tests that he did take, and he obviously failed to avoid further legal problems or abide by the rules of his probation. We conclude that this constitutes substantial non-compliance with Father's permanency plans and that the chancery court properly terminated Father's parental rights on this ground.

4. Persistent Conditions

The statutory ground for termination that is commonly referred to as "persistent conditions," is defined in Tennessee Code Annotated section 36-1-113(g)(3) as existing when:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
>> (A)    The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;
>
>> (B)   There is little likelihood that these conditions will be remedied

10

at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and

      (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3). In order to terminate parental rights, there must be clear and convincing evidence of each of these elements. *In re Valentine*, 79 S.W.3d at 550. The purpose behind the "persistent conditions" ground for terminating parental rights is "'to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child.'" *In re Dakota C.R.*, 404 S.W.3d 484, 499 (Tenn. Ct. App. 2012) (quoting *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)). The statutes governing termination of parental rights recognize a child's need for a permanent, stable environment. *In re K.A.H.*, No. M1999-02079-COA-R3-CV, 2000 WL 1006959, at *5 (Tenn. Ct. App. July 21, 2000). Accordingly, the question is the likelihood that the child can be safely returned to the custody of the parent, not whether the child can safely remain in foster care with periodic visits with the parent. *Id.*

Father asserts that the chancery court erred in holding that this ground for termination existed because the condition that formed the basis for the Child's removal was the Mother's drug use, and she has now relinquished her parental rights. However, the record shows that Father not only continued his relationship with Mother after being warned of her substance abuse problems, he then went forth and married her. Then, on June 7, 2016, the court found that Mother had recently tested positive for methamphetamine again. The chancery court further found that there was little chance that these conditions would be remedied soon so that the child could be returned to the home safely, and that to continue the parent/child relationship would greatly diminish the Child's chances "of early integration into a safe, stable and permanent home." Father states to this Court that he "is hopeful his current incarceration will end soon." While the record is unclear regarding when Father's current incarceration will end, upon release Father will then have to return to Kentucky to resolve legal issues there. The Child has been in foster care since he was removed from Mother's and Father's home on May 31, 2013. The Child's counselor testified that the Child is doing well in his foster home, but that being in limbo and lingering in state custody any longer would be detrimental to the Child. We agree with the chancery court's conclusion that there was clear and convincing evidence to terminate Father's parental rights based on this ground.

5. Severe Abuse

Pursuant to Tennessee Code Annotated section 36-1-113(g)(4), a court may terminate parental rights when:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian.

Tenn. Code Ann. § 36-1-113(4). Tennessee Code Annotated section 37-1-102(b)(22) includes the following activity in the definition of severe child abuse: "(D) Knowingly allowing a child to be present within a structure where the act of creating methamphetamine . . . is occurring[.]"

In September 2011, Mother and Father both stipulated that the Child was severely abused as a result of manufacturing of methamphetamine in the home and the Child testing positive for methamphetamine. In July 2013, DCS filed to terminate Mother's and Father's parental rights alleging severe abuse as the sole ground. The chancery court found that severe abuse existed and terminated the parents' rights to the Child. On appeal, although we reversed the termination of parental rights based on a finding that termination was not in the Child's best interest at that time, this Court held that "clear and convincing evidence exists to establish a ground of severe abuse," and that the judgment of the chancery court was "affirmed as to the finding that a ground exists" to terminate Mother's and Fathers' parental rights.

Because Father was found to have committed severe abuse under a prior court order, this ground for termination has been established by clear and convincing evidence.

### B. Best Interest of the Child

Because the chancery court properly found the existence of multiple statutory grounds for termination of Father's parental rights, we now consider the chancery court's finding that terminating Father's parental rights is in the best interest of the Child. Tennessee Code Annotated section 36-1-113(i) sets forth a list of factors that are relevant in a best-interest analysis. However, this list of factors is not exhaustive, and a court need not find the existence of every factor for termination. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). This Court has also noted that "the best interests of a child must be determined from the child's perspective and not the parents." *In re Arteria*

*H.*, 326 S.W.3d 167, 182 (Tenn. Ct. App. 2010) (citing *White v. Moody,* 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

The evidence in this case is clear and convincing that it is in the best interest of the Child that Father's parental rights be terminated. In its order terminating Father's rights, the chancery court found the following:

> [Father] has not made such an adjustment of circumstances, conduct or conditions to make it safe for the child to return to his home as he is currently incarcerated and thinks he may be released in June of 2017. Upon his release in Tennessee he will be transferred to Kentucky and must resolve his charges there. He is not in a position to resume care or custody of the child and will not be for at least another 11 months.
>
> . . . [Father] continues to fail to accept responsibility for the position his child is currently in, he fails to acknowledge he has any alcohol and drug issues, and fails to be honest with the providers working with him so that they can provide meaningful services to him. Further, his efforts at ignoring and/or concealing his criminal situation . . . demonstrate[] his lack of ability to take responsibility for and address the circumstances his choices place his child in.
>
> [Father] has not had visitation with the child since September 19, 2015, and has not paid any child support for the benefit of the child. Further, even though he has a bond with the child it is not a meaningful bond at this point.
>
> The child's therapist testified that changing caretakers and physical environment is likely to have a detrimental impact on the child's emotional and psychological condition.
>
> When all the factors above are evaluated the Court finds by clear and convincing evidence that termination is in the best interest of the minor child.

We agree. The Child's counselor testified in no uncertain terms that continuing to be in a position of uncertainty about his placement is not beneficial for the Child, and that being in foster care any longer would be more detrimental to the Child than terminating Father's rights. The Child has been with his current foster family since December 3, 2013, he is doing well there, and his foster mother and father would like to adopt him. After considering the combined weight of the factual findings supported by the record, it

is our view that the chancery court properly determined that terminating Father's parental rights is in the best interest of the Child.

## IV. CONCLUSION

For the foregoing reasons, we affirm the chancery court's judgment terminating Father's parental rights. Costs of this appeal are taxed to appellant, Father. Because Father is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
BRANDON O. GIBSON, JUDGE