IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2019

### IN RE BRENDAN G.[1]

**Appeal from the Chancery Court for Warren County**
**No. 648A     Larry B. Stanley, Jr., Chancellor**

_____

### No. M2019-00081-COA-R3-PT

_____

This action involves the termination of a father's parental rights to his minor child. Following a bench trial, the trial court found that clear and convincing evidence existed to support the statutory grounds of (1) failure to establish or exercise paternity; (2) severe child abuse; and (3) sentence of imprisonment for severe child abuse. The trial court also found that termination was in the best interest of the child. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, J.J., joined.

Sheila Younglove Miner, McMinnville, Tennessee, for the appellant, Daniel D.

Nathan A. White, Murfreesboro, Tennessee, for the appellees, Tyler and Tabitha C.

### OPINION

### I.     BACKGROUND

The Child at issue was born out-of-wedlock to Tabitha C. ("Mother") in September 2012. The Child's father, who was not listed on the birth certificate, was later identified as Daniel D. ("Father"). Father made no claims of paternity and failed to legitimate the Child. The Child has resided with Mother continually since birth.

_____

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

Mother married Tyler C. ("Stepfather") on April 8, 2016. Mother and Stepfather (collectively "the Petitioners") filed a petition to terminate Father's parental rights and for Stepfather's adoption of the Child on September 1, 2017. The Petitioners alleged the following statutory grounds supporting the request for termination: willful abandonment and wanton disregard for the Child's welfare prior to incarceration; failure to establish or exercise paternity; severe child abuse committed against another child; and Father's sentence of imprisonment of two years or more for severe child abuse.

The case proceeded to a hearing on the termination petition on November 15, 2018. Mother testified that she and Father were "together" for a short period of time before she became pregnant with the Child. She claimed that she informed him of the pregnancy and agreed that he attended at least one prenatal visit prior to the Child's birth. She denied ever receiving any financial assistance from him prior to or after the birth. She agreed that his family purchased some items for the Child for Father's use when caring for the Child. She stated that he last visited with the Child at the Child's first birthday party in September 2013. She acknowledged that there were a "few times" that she denied his requests for visitation. She explained that she either did not have the Child at the moment he requested visitation or that his requests were followed by threats when she advised him that the current time would not work with her schedule. She ultimately "blocked" him from her Facebook account due to his threats of harm. She provided that he also dealt drugs, had been convicted of domestic assault against his own mother, and was homeless for a period of time.

Mother testified that she and Stepfather have been married for two years and have two children of their own. She stated that Stepfather is employed and serves as a great father to their children. She claimed that the Child loves him and views him as his father.

Stepfather expressed his love and concern for the Child and indicated his desire to adopt him if permitted.[2] He admitted that Father showed some concern for the Child and was present at a few doctor's appointments and paid for some doctor visits. He recalled that Father threatened him and his family on occasion but agreed that Father never actually harmed him. He explained that Mother was concerned about Father's inability to control his anger as evidenced by his domestic assault of the paternal grandmother.

Stepfather admitted that he also had a criminal history and had been addicted to drugs. He claimed that he has since resolved his legal troubles and completed drug rehabilitation. He stated that he is also currently employed and is able to provide for his children.

---

[2] Stepfather's father confirmed Stepfather's love and concern for the Child.

Father testified that he was 17 years old when the Child was born. He agreed that he did not establish his paternity but claimed that he attended and remitted payment for a few doctor appointments. He stated that his mother also hosted a baby shower for Mother and that he and his family provided her with cash on occasion for the Child. He and his family also purchased necessary items for the Child, e.g., diapers, formula, clothing, etc. He claimed that Mother denied his attempt to establish a parenting plan and that she also continually denied his requests for visitation with the Child. He admitted that he never sought visitation through the court system. He expressed love and concern for the Child and stated his intent to serve as the Child's father. He denied ever threatening or harming the Child. He admitted his addiction to drugs but claimed that he has since been rehabilitated.

Father admitted that he pled guilty to the offense of aggravated child abuse and was currently serving a sentence of eight years for the offense. He agreed that he lived with the child he was alleged to have abused and his mother for approximately four months prior to the abuse. He acknowledged that the child, who was two months old at the time, suffered from a fractured skull and hemorrhaging as a result of the abuse. Despite his plea of guilty, Father denied harming the child. He explained that he pled guilty because he "was bound to end up in prison some other way," either as a result of drugs or another violent crime.

Crystal W., the paternal grandmother ("Grandmother"), confirmed Father's claim that their attempts to schedule visitation with the Child were denied.[3] She further confirmed that she provided money and other items for the Child. She stated that she last saw the Child in November 2013, despite her repeated requests for visitation. She recalled that when allowed to visit, Father did well with the Child, despite his age and inexperience at the time. She agreed that Father was not "perfect" and acknowledged that he was convicted of domestic assault for actions he committed toward her. She explained that as a result of that conviction, he was not allowed in her house for approximately one year. She stated that she understood Mother's hesitation to allow visitation with Father as a result of his violent tendencies.

Following the hearing, the trial court denied any claim of willful abandonment, explaining that Father's attempts to visit and support the Child prior to the filing of the termination petition were thwarted by Mother. The court granted the termination petition on the remaining grounds, finding that Father had (1) failed to establish or exercise paternity; (2) had been found guilty of severe child abuse; and (3) had been sentenced to a term of two years or more for his conviction of severe child abuse. The court also found that termination was in the best interest of the Child. This timely appeal followed.

---

[3] Grandmother's husband also confirmed her claims regarding their failed attempts to schedule visitation.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether clear and convincing evidence supports the court's termination based upon a finding of failure to establish or exercise paternity pursuant to Tennessee Code Annotated section 36-1-113(g)(9).

B.    Whether clear and convincing evidence supports the court's termination based upon a finding of severe child abuse pursuant to Tennessee Code Annotated section 36-1-113(g)(4).

C.    Whether clear and convincing evidence supports the court's termination based upon Father's sentence of imprisonment for severe child abuse committed against another child pursuant to Tennessee Code Annotated section 36-1-113(g)(5).

D.    Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

## III.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

(1)    [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)    [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c).  "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).  The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights.  *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions.  *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).  Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable.  *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003).  This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.  *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004).  It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established.  *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d).  Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise.  In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights.

The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV.    DISCUSSION

Father does not appeal the statutory grounds supporting the court's termination decision. In such cases, our Supreme Court offered the following instruction:

[I]n an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal.

*In re Carrington H.*, 483 S.W.3d at 525-26 (internal citation and footnote omitted). Accordingly, we will review each ground in turn.

### A.

Relative to a parent's failure to establish or exercise paternity, Tennessee Code Annotated section 36-1-113(g)(9)(A) provides as follows:

(9)(A) The parental rights of any person who, at the time of the filing of a petition to terminate the parental rights of such person, or if no such petition is filed, at the time of the filing of a petition to adopt a child, is the putative father of the child may also be terminated based upon any one (1) or more of the following additional grounds:

* * *

(ii) The person has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the department pursuant to § 36-5-101;

(iii) The person has failed to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether, or has engaged in only token visitation, as defined in § 36-1-102;

(iv) The person has failed to manifest an ability and willingness to assume legal and physical custody of the child;

(v) Placing custody of the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child; or

(vi) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity, or as required in § 36-2-318(j), or after making a claim of paternity pursuant to § 36-1-117(c)(3);

Sufficient proof of any single ground is sufficient to terminate parental rights under (g)(9)(A). Father has admitted his failure to establish paternity of the Child. Further, he has failed to manifest an ability and willingness to assume legal and physical custody of the Child. The record also reflects that placing custody of the Child in his care would pose a risk of substantial harm to the physical or psychological welfare of the Child. We affirm the court's finding on this issue.

## B. & C.

The trial court may terminate parental rights based upon a finding of severe child abuse against any child either as found "under any prior order of a court" or as "found by the court hearing the petition to terminate parental rights." Tenn. Code Ann. § 36-1-113(g)(4). Here, the trial court found clear and convincing evidence in support of this statutory ground of termination based upon Father's conviction for severe child abuse committed against another child. The finding of severe abuse is "a final decision, which the [parent] is barred from challenging" when the parent had a full and fair opportunity to litigate the issue of severe abuse in the prior suit and did not appeal. *State Dep't of Human Servs. v. Tate*, No. 01-A-01-9409-CV-00444, 1995 WL 138858, at *5 (Tenn. Ct. App. Mar. 31, 1995). Father did not appeal his conviction for severe child abuse. Accordingly, the order became a final order and may be relied upon pursuant to Tennessee Code Annotated section 36-1-113(g)(4). With these considerations in mind, we uphold the court's finding of severe child abuse.

Likewise, we affirm the court's termination based upon Father's sentence of imprisonment for two years or more for severe child abuse pursuant to Tennessee Code Annotated section 36-1-113(g)(5), which provides, in pertinent part, as follows:

> The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child *or any other child residing temporarily or permanently in the home of such parent or guardian*, that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102. Unless otherwise stated, for purposes of this subdivision (g)(5), "sentenced" shall not be construed to mean that the parent or guardian must have actually served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian[.]

(Emphasis added.). While the trial court erroneously found that Father committed severe child abuse against the Child's half-sibling, this ground was still properly applied because Father was sentenced to a term of eight years for severe child abuse committed against a child he lived with temporarily.

D.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
>> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>>
>> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies

for such duration of time that lasting adjustment does not reasonably appear possible;[4]

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the

---

[4] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

We acknowledge Father's love and concern for the Child. However, the fact remains that he is incarcerated and will remain incarcerated for several more years, leaving him unable to care for the Child for a significant period of time. Tenn. Code Ann. § 36-1-113(i)(1), (7). Further, questions remain as to his ability to provide safe and stable care for the Child as evidenced by his violent tendencies and convictions related to those tendencies. Tenn. Code Ann. § 36-1-113(i)(7), (8). Meanwhile, the Child has bonded with Stepfather and has only ever lived with Mother. A change of caretakers at this point in the Child's life would be detrimental to his emotional condition when he has not even seen Father for several years. Tenn. Code Ann. § 36-1-113(i)(5). The Child should be allowed to achieve permanency and stability in his current home. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child. We affirm the trial court.

## V.     CONCLUSION

The judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Daniel D.

_____
JOHN W. McCLARTY, JUDGE