IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 23, 2017 Session

## IN RE BRENNEN T.[1]

**Appeal from the Chancery Court for Robertson County**
**No. CH-11-CV-10234      Laurence M. McMillan, Jr., Chancellor**

_____

### No. M2016-01639-COA-R3-PT

_____

This appeal involves the termination of a mother and father's parental rights to their minor child. Following a bench trial, the trial court found that clear and convincing evidence existed to support the termination of each parent's parental rights on the statutory ground of abandonment for failure to remit child support. The court further found that termination of each parent's rights was in the best interest of the child. The parents appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and ANDY D. BENNETT, J., joined.

Brandi L. Jones, Springfield, Tennessee, for the appellant, Nicole S. F.

John B. Holt, Springfield, Tennessee, for the appellant, Kenneth E. T.

Kimberley L. Reed-Bracey, Goodlettsville, Tennessee, for the appellees, Kareena S. V. and Scott L. V.

### OPINION

### I.      BACKGROUND

Brennen T. ("the Child") was born to Nicole S. F. ("Mother") and Kenneth E. T. ("Father") in November 2009. Mother and Father (collectively "the Parents") married

_____

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

approximately five months later. Paternal relatives, Kareena V. ("Aunt") and Scott V. ("Uncle") (collectively "the Petitioners") have maintained custody of the Child over the Parents' objection since he was ten months old. This is the second appeal concerning the attempted termination of the Parents' parental rights. In the first appeal, we recounted the facts as follows:

> The [Child] lived with [the Parents] from birth until September 13, 2010, when the [C]hild was approximately ten months old. At that time, [the Parents] arrived at the home of paternal grandfather and allegedly indicated that they were facing eviction, and had no food or diapers for the [C]hild. Further, they were allegedly watering down the [C]hild's formula to make it last longer. According to [the Parents], they merely intended to seek financial assistance from paternal grandfather. Upon their arrival, [the Parents] learned from paternal grandfather that paternal grandfather and [Aunt] were leaving for a vacation to South Carolina. At the suggestion of [Aunt], [the Parents] allowed the [C]hild to go on vacation with [Aunt], upon being advised they would be gone only a few days. Mother, at [Aunt's] request, signed a letter authorizing [Aunt] to seek medical attention for the [C]hild in the event of an emergency. During this trip, [Aunt] allegedly began seeking legal counsel in an effort to obtain custody of the [C]hild when [the Petitioners] returned to Tennessee. On their return from vacation, both Mother and Father were sick with either pertussis or pneumonia. Because of their illnesses, [Aunt] told them she should keep the [C]hild until they were no longer contagious.
>
> Without informing [the Parents], [the Petitioners] filed an emergency petition for Dependency and Neglect in the Juvenile Court of Robertson County, Tennessee on September 21, 2010. As a result of the filing, [the Petitioners] obtained an ex parte order granting them temporary custody of the [C]hild. While still recuperating, [the Parents] visited the [C]hild at [the Petitioners'] residence on September 23, 2010. During this visit [Aunt] failed to inform [the Parents] that she had filed the dependent and neglect petition and had obtained a custody order on the previous day. Due to their illnesses, [the Parents] left the [C]hild in [their] care.
>
> Between September 23, 2010 and October 2, 2010, [the Parents] attempted on several occasions to contact [the Petitioners], but were denied any contact until October 2, 2010. On October 2, 2010, contact was finally made with [Aunt] and a dispute arose. Father advised [Aunt] that he was coming to retrieve the [C]hild and at this time [the Petitioners] disclosed

that they had already obtained custody of the [C]hild, without [their] knowledge, and would call the police if Father came to get him.

*In re Brennen T.*, No. M2013-01451-COA-R3-PT, 2014 WL 2841078, *1 (Tenn. Ct. App. June 19, 2014). Two days later, on October 4, 2010, the Parents filed a request for a 72-hour hearing. The hearing convened on October 7, 2010; however, the court continued the hearing to allow the Parents time to retain counsel. Once they retained counsel, a final hearing was set for April 14, 2011. This hearing never occurred because the Petitioners filed their first termination petition on February 8, 2011, alleging abandonment for failure to visit and support the Child.

The Parents denied the allegations, and Mother filed a counter-complaint, alleging malicious use of process, kidnapping, and perjury. The case proceeded to a hearing, after which the trial court found that the Petitioners failed to establish grounds for termination and that termination was not in the best interest of the Child. The court did not rule on Mother's claims.

The Petitioners appealed to this court. During the pendency of the appeal, they filed a motion to consider post-judgment facts.[2] We denied the motion, finding that the facts were not truly post-judgment facts and that the relief requested should be sought through a Rule 60 motion. The Petitioners then filed a Rule 60 motion, which was denied by the trial court for lack of jurisdiction given the pending appeal. Thereafter, we dismissed the appeal for lack of a final judgment because the court never ruled upon Mother's outstanding claims for malicious use of process, kidnapping, and perjury. *In re Brennen T.*, 2014 WL 2841078, at *6.

Upon remand, the contentious litigation between the Parties continued. Meanwhile, the Parents were provided weekly visitation for one hour each Sunday at a McDonald's in Springfield, Tennessee. Neither parent lives in Springfield, but they regularly commuted from Lebanon and Clarksville for visitation.

On April 20, 2015, the Petitioners filed the instant petition to terminate, again alleging abandonment for failure to visit and support. The Parents objected and ancillary litigation ensued until they filed a notice of voluntarily dismissal of all pending tort claims. These claims were dismissed without prejudice by order of the court on October 19, 2015. The Petitioners eventually responded in kind with their own notice of voluntary dismissal of their responsive tort claims. These claims were dismissed without prejudice by order of the court on November 9, 2015.

---

[2] The Petitioners sought to supplement the record with an order from the juvenile court allegedly establishing that the Parents lied under oath, thereby affecting their credibility.

- 3 -

The case proceeded to a hearing on the termination petition on May 18, 2016. At that time, the Child had been in the continuous care of the Petitioners since September 2010. The Parents had not remitted child support since April 2014, despite an agreement to remit payment in the amount of $200 per month.

Uncle testified that he works in the Human Resources Department for the Tennessee Army National Guard. He holds the rank of Major but claimed that it was unlikely that he would receive deployment orders due to his current career track. He provided that he and his wife live in Greenbrier, Tennessee, where they own their home. He noted that the Child has lived with them in that home for approximately five years. He asserted that he is capable of providing for the Child and expressed intent to adopt him if permitted by the court. He claimed that the Child excelled in school but had exhibited some concerning behavior as a result of the ongoing litigation. He asserted that the Child appeared fearful following certain visitations as evidenced by bedwetting and no longer wanting to sleep alone. He explained that the Parents argued with the Child during visitation regarding their identity as the Child's biological parents and engaged both the Petitioners in verbal altercations.

Relative to child support, Uncle testified that neither parent remitted child support during the four months preceding the filing of the termination petition on April 20, 2015. He further claimed that he had not received any payments since April 2014, despite the fact that the Parents had maintained periods of employment. He noted that the Parents often quit employment or were fired on multiple occasions. He provided that Mother was employed during the relevant time period, while Father quit his current job and moved to Michigan for approximately three months.

Relative to visitation, Uncle provided that he attended the visitation without Aunt because her presence often elicited altercations between the Petitioners and the Parents. He noted that he kept a record of the visitation history, beginning in July 2015, after the filing of the termination petition. He claimed that his records indicated that Mother missed approximately three visitations due to transportation or other issues, while Father missed visitation "numerous times" in the past year. He agreed that the Parents provided approximately $50 in groceries at visitation after the instant termination petition was filed. He also agreed that the Parents provided crafts, toys, gifts, and clothes on occasion.

Uncle expressed concern regarding the Parents' ability to care for the Child. He provided that Father had been hospitalized for suicidal ideation in November 2015 and was also diagnosed with a heart condition as a result of long-term drug usage. Father admitted during depositions in September 2015 to smoking marijuana and using cocaine. Uncle recalled that Father also indicated that Mother had relapsed as well. He provided that Mother was arrested on October 31, 2015, for simple possession of marijuana and

had also been charged with domestic violence. He acknowledged that Mother claimed that the drugs belonged to Father only and that the charges were later dismissed.

Aunt testified that she has been employed in the medical profession for approximately ten years as a nurse and that she currently works for Centennial Medical Center as a Transitional Care Coordinator. She too expressed intent to adopt the Child.

Aunt provided that visitation was not ordered until after the filing of the initial termination petition. She claimed that she and Uncle complied with the court's visitation order to the best of their ability. She explained that she no longer attended visitation because of the altercations that inevitably ensued when she was present. She noted that Uncle facilitated visitation in compliance with the court's order. She acknowledged that Mother only missed two or three visitations during the relevant time period.

Relative to child support, Aunt confirmed that the Parents failed to remit support during the relevant time period. She agreed that the Parents provided crafts, toys, and clothes on occasion. She acknowledged that Mother also bought groceries three times in 2016. She noted that Mother indicated that they were responsible for remitting $250 payments to their attorney each week for approximately four or five weeks to represent them for their tort claims that were later voluntarily dismissed. She claimed that Mother advised her that she did not intend to secure employment because she was starting a nonprofit organization related to the custody and termination proceedings. She noted that Mother was currently under federal investigation for operating an unregistered nonprofit organization. She provided that Father indicated that he remitted support for another biological child in Michigan.

Aunt expressed concern regarding the Parents' ability to care for the Child. She noted that at times, each parent admitted to not having electricity, gas, or water at his or her residence. She further provided that Father lived in his vehicle. She also questioned each parent's mental stability as evidenced by Mother's arrest for domestic assault and Father's admission that he "blacked out" as a result of his post-traumatic stress disorder.

The Parents alleged that they provided crafts, toys, clothes, gifts, and groceries during visitation but admitted that they did not remit child support during the relevant time period or in the two years prior to the hearing. Father explained that he was homeless and unemployed at times during the relevant time period. He acknowledged receipt of disability payments but claimed that these funds were garnished to pay support for another child. He also acknowledged that he was actually employed from March 2015 through September 14, 2015. He admitted that he did not remit support despite this period of employment. He claimed that "[e]very penny [he] made went into surviving and making the bills." He later acknowledged that he purchased beer, marijuana, and

supplies to roll his own cigarettes.  He agreed that he admitted to having approximately $1,000 in savings on September 9, 2015.  He explained that he saved the money to pay his attorney but that he ultimately used the money to purchase a car for Mother.  He acknowledged that he was employed at various times throughout the entirety of the case and that he either quit or his employment was terminated.

Father questioned the Petitioners' decisions concerning the Child's medical care and noted that he observed injuries while visiting with the Child.  He claimed that the Child had a bruise on his cheek the week prior to the hearing and that on another occasion, the Child had "a huge knot on his head that was cut in the middle."  He provided that the Petitioners' alleged that the bruise was caused by a dentist and that the knot was caused by a block thrown by another child at school.  He asserted that the Child's teeth had also been capped while in the care of the Petitioners.

Relative to visitation, Father claimed that he maintained visitation regularly, with the exception of a few visits due to health issues, a period of time when he was in Michigan caring for his other minor child,[3] and a period of time when he believed the visitation had become upsetting for the Child.  Father explained that the Petitioners interfered with his ability to interact with the Child.  He admitted to confronting the Petitioners regarding the prolonged litigation during visitation and explained that he believed the Child had been emotionally abused to "gain leverage to use against [us] in [court]."  Despite these difficulties, he eventually resumed his attendance and even asked to attend the Child's birthday parties or to schedule additional visits outside of McDonald's.  The Petitioners denied his requests.

Father admitted that he had relapsed and began using drugs following the last termination hearing.  He acknowledged use of cocaine and marijuana.  He provided that he checked himself into a hospital on October 1, 2015, for suicidal ideation.  He noted that he also received treatment for a genetic heart condition.  He denied that his condition was caused by long-term drug usage.

Mother conceded that she failed to remit support during the relevant time period but claimed that she spent money on gas to attend visitation and that she purchased numerous items and groceries for the Child.  She provided that her income for 2015 was $9,000 and acknowledged that she was employed at times during the relevant period. She noted that she generally made $14 to $16 per hour when she was employed and that she used her money to pay living expenses, attorneys for this litigation, and items for the Child.  She agreed that her employment was terminated at one point due to her arrest for

---

[3] The record reflects that Father returned from Michigan on January 1, 2015.

simple possession and domestic assault. She asserted that it was difficult to maintain employment due to the stress of this ongoing litigation.

Mother claimed that she had attended almost every scheduled visitation and always provided notice when she was unable to attend. She provided that she repeatedly requested additional visitation but that her requests were always rebuffed. She acknowledged that she did not request additional visitation through the court system.

Mother testified that she currently lives with another family and does not have her own residence. She also takes medication for anxiety due to the stress of the litigation.

Following the hearing, the trial court rejected the ground of abandonment for failure to visit. However, the court found clear and convincing evidence to support termination of each parent's parental rights based upon abandonment for failure to remit child support. The court further found that termination of each parent's parental rights was in the best interest of the Child. In so finding, the court noted, inter alia, as follows:

> [The Parents] have only received limited visitation since they lost custody of the [C]hild. No meaningful relationship has been established with such minimal contact for the majority of [the Child's] life. Further, per [Uncle's] testimony, [the Parents] argued with [the Child] over the six year old not referring to them as mom and dad. Clearly, from [the Child's] perspective, [the Parents] are not his parents and thus shows a lack of meaningful relationship. Furthermore, after being successful in the first termination proceeding, both [of the Parents] elected to pursue trivial tort claims that delayed the proceedings rather than immediately pursue additional visitation rights through the Juvenile Court. This delay, to include failure to appear at numerous depositions, resulted in the filing of the second termination petition.

This appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether clear and convincing evidence supports the court's termination of each parent's parental rights based upon a finding of abandonment for failure to remit child support pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

B. Whether the court erred in finding that clear and convincing evidence did not support termination based upon a finding of abandonment for failure to visit pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

C. Whether clear and convincing evidence supports the court's finding that termination of each parent's parental rights was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

D. Whether the court erred in denying the Rule 60 motion.

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that

termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV.    DISCUSSION

### A.

In determining whether termination of each parent's parental rights was warranted based upon the statutory grounds of abandonment for failure to remit support and to visit, the court considered the four months preceding April 20, 2015, the filing date of the termination petition. The relevant time period was December 20, 2015, through April 19, 2016.[4]

A parent's willful failure to support "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). Token support is "support, under the circumstances of the individual case, [that] is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). A parent's willful failure to visit "means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). Token visitation is "visitation, under the circumstances of the individual case, [that] constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

This court has consistently held that the term willfulness as it applies to a party's failure to remit support or to visit must contain the element of intent. *In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999). The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code." *In re Audrey S.*, 182 S.W.3d at 863. "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id.* "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id.* at 863-64.

### 1.

The Parents claim that they provided support in the form of gifts and food during the relevant time period. They further argue that any failure to remit monetary support was not willful due to their lack of gainful employment. The Petitioners respond that the court's finding of abandonment was supported by clear and convincing evidence.

---

[4] "The applicable four month window . . . includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed." *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014).

We acknowledge that the Parents were unemployed at various times. However, this was not a case where a parent had extenuating circumstances but faithfully provided support when he or she was able. *See In re Dylan H*., No. E2010-01953-COA-R3-PT, 2011 WL 6310465, at *7 (Tenn. Ct. App. Dec. 16, 2011) (reversing the termination decision because mother was simply unable to fulfill her child support obligation during the relevant time period). In this case, the Parents had not remitted support in the two years prior to the filing of the termination petition, despite periods of employment during the relevant time period. While the record reflects that food and gifts were provided on occasion, we hold that these items were token in nature given the circumstances presented here. With these considerations in mind, we conclude that there was clear and convincing evidence to establish that the Parents' abandoned the Child by willfully failing to remit child support during the relevant time period.

2.

The Petitioners claim that a finding of termination for failure to visit was supported by clear and convincing evidence because each parent missed visitation and never requested additional time with the Child. Only one statutory ground must be established by clear and convincing evidence to justify termination. Tenn. Code Ann. § 36-1-113(c). In the event of further appellate review, we will address the Petitioners' claim. Here, the record reflects that Mother attended all but three or four visits during the entirety of the Child's residency with the Petitioners. While Father admittedly missed more visits, the record was unclear as to the amount of visits he actually missed. The record submitted by the Petitioners only documented the period following the filing of the termination petition. With these considerations in mind, we conclude that there was not clear and convincing evidence to establish that the Parents willfully failed to visit during the relevant time period.

B.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground to terminate each parent's parental rights, we must consider whether termination was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

(i)     In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

- 11 -

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re*

- 12 -

*M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

A number of the best interest factors weigh against the Parents. They had not made the adjustment of circumstances necessary to make it safe and in the Child's best interest to return home. Indeed, the record reflects that Mother was living with another family, while Father had relapsed and was hospitalized for suicidal ideation. Tenn. Code Ann. § 36-1-113(i)(1). While the Parents maintained regular visitation, a meaningful relationship was not established as evidenced by the contentious nature of the visitations. Tenn. Code Ann. § 36-1-113(i)(4). The Child resides in a safe and stable home that is willing and able to adopt him. Removing him would negatively affect his emotional condition. Tenn. Code Ann. § 36-1-113(i)(5). Questions remain as to whether the physical environment of either parent's home is healthy and safe as evidenced by Father's continued drug use and Mother's involvement with the same as evidenced by her arrest following the first appeal. Tenn. Code Ann. § 36-1-113(i)(7). Questions also remain concerning each parent's mental and/or emotional status as evidenced by Father's hospitalization and Mother's focus upon the Petitioners, rather than attempting to establish a suitable home for the Child. Tenn. Code Ann. § 36-1-113(i)(8).

While we do not wish to discount the Parents' love for the Child or the manner in which the Petitioners secured custody of him, he lives in a loving home. We, like the trial court, find it troubling that the Parents chose to pursue ancillary litigation rather than secure additional visitation through the court system to establish a relationship with the Child. Indeed, two years passed since the dismissal of the appeal and the hearing on the second termination petition. In that time, the Parents failed to establish their ability to care for the Child or for themselves as evidenced by their inability to maintain suitable housing or gainful employment for an extended period of time. The Child has simply languished in this ongoing litigation for far too long. He should be allowed to achieve permanency and stability in his current home, the only home he has known since he was ten months. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of each parent's parental rights was in the best interest of the Child. We affirm the decision of the trial court.

D.

In the event this court does not uphold the termination decision, the Petitioners' request review of the trial court's denial of the Rule 60 Motion in the first proceeding.[5] They further request that the Parents be enjoined from posting pictures or comments regarding the Child or this proceeding. These issues are pretermitted by our decision to uphold the termination.

## V.    CONCLUSION

This judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellants, Nicole S. F. and Kenneth E. T.

_____
JOHN W. McCLARTY, JUDGE

---

[5] The denial of the motion was not raised as an issue in the first appeal. *See In re Brennen T.*, 2014 WL 2841079, at *4 n. 6 ("Neither party raises the trial court's denial of the Rule 60 motion as an issue on appeal.").