IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 22, 2018 Session

IN RE ABAGAIL D.[1]

Appeal from the Chancery Court for White County
No. 2016-CV-72      Ronald Thurman, Chancellor

_____

No. M2017-02557-COA-R3-PT

_____

This action involves the termination of a mother's parental rights to her minor child. Following a bench trial, the court found that clear and convincing evidence existed to support the statutory grounds of abandonment for failure to visit and to support and that termination was in the best interest of the Child. We vacate the order and remand for additional findings of fact.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., and J. STEVEN STAFFORD, P.J., W.S. joined.

John E. Hutson, Sparta, Tennessee, for the appellant, Amanda D.

Kelsy Miller, Cookeville, Tennessee, for the appellees, Michael G. and Shannon G.

OPINION

## I.    BACKGROUND

Abagail D. ("the Child") was born to Amanda D. ("Mother") and Michael G. ("Father") in April 2011. The Child resided with Mother in Kentucky until August 2014, when she and her two half-siblings were removed based upon allegations of drug and alcohol abuse. The Child was placed with Father in Tennessee, and visitation and child support were addressed pursuant to a court order in Kentucky.

_____

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

Mother was provided visitation via Skype each Wednesday between 7:30 p.m. and 8:30 p.m. and overnight visitation in Cookeville, Tennessee, subject to certain limitations. She was not permitted to leave Cookeville during visitation and was required to show proof of a hotel reservation in the area for the visitation period. Mother failed to provide such proof and did not utilize her overnight visitation or remit child support.

Father and his wife, Shannon G. ("Stepmother") (collectively "the Petitioners"), filed a petition for termination and adoption on August 29, 2016, alleging, as pertinent to this appeal, abandonment for failure to visit and to support. Mother conceded that she had not visited or remitted support but claimed that her failure to do so was not willful. She explained that she was in a rehabilitation program from September 27, 2015, through August 27, 2016. She claimed that she never failed a drug screen while in the program and that she is ready and able to care for the Child as evidenced by her suitable home and stable employment. She alleged that her repeated requests for visitation via Skype were denied and that her offers to help with the Child's expenses were rebuffed.

The case proceeded to a hearing on the termination petition. The hearing was recorded; however, the court reporter's files were lost due to a faulty hard drive. The trial court entered a statement of the evidence for the purposes of this appeal. Father testified that Mother's alcohol and drug abuse resulted in their divorce and that the Child was ultimately removed as a result of Mother's addiction. Mother's other two children were also removed and placed with their respective father. He claimed that from August 2014 through September 2016, Mother "rarely called or visited" and that Mother had no contact with the Child and paid no support during the four months preceding the filing of the petition. He claimed that he and his current wife "made no effort to thwart" visitation but that they simply required Mother to follow the stipulations contained in the order. He claimed that the Child had no relationship with Mother but had bonded with Stepmother.

Stepmother confirmed Father's testimony and testified concerning her loving relationship with the Child. She claimed that the Child is thriving and also enjoys a healthy relationship with the other children in their home. She asserted that the Child was "withdrawn and always hungry" prior to her placement with them, that Mother's home was "always very dirty," and that there were many unrelated guests in the home. She noted that Mother and the Child were also homeless at one point.

Shawn R. testified that he was in a relationship with Mother for six years and fathered two of her sons. He received custody of them in 2014. He recalled that Mother would drink to the point of passing out and leaving the children unsupervised. He asserted that she attended rehabilitation programs but always relapsed. He claimed that she provided no support and only sought visitation after he sought termination.

Mother testified that she currently resides in Kentucky and lives in a rented home with her fiancé, a recovered heroin addict. She conceded that she had not visited the Child or remitted child support during the relevant time period. She claimed that she could not visit the Child because she did not have transportation. She asserted that Stepmother would also not allow her to visit the Child, but she later conceded that she made no effort to enforce the court order providing for visitation even though she had the ability to comply with the stipulations of the order.

Relative to child support, Mother confirmed that she maintained employment from January 2016 through November 2016 as a server, with an approximate income of $20 to $40 per day and that she is currently working at a restaurant making $380 per week. She provided that she is responsible for rent in the amount of $400 per month and a car payment in the amount of $75 per week. She has also purchased tattoos and smokes approximately a half pack of cigarettes per day.

The trial court granted the termination petition, holding that Mother had abandoned the Child by failing to visit and to remit child support. In so holding, the court found that Mother had willfully failed to provide support since the time of removal, despite a period of employment during the relevant time period in which she made approximately $20 to $40 per day at a restaurant. Relative to visitation, the court found that she had willfully failed to visit, despite testimony suggesting that the Petitioners did not allow visitation. The court noted that Mother failed to present phone records establishing that her calls were denied and that the Petitioners claimed that they did not impede overnight visitation but merely required Mother to comply with the specific restrictions of visitation pursuant to the court order. The court further found that termination was in the best interest of the Child. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues on appeal as follows:

A. Whether clear and convincing evidence supports the court's termination of Mother's parental rights based upon a finding of abandonment for failure to remit child support pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

B. Whether clear and convincing evidence supports the court's termination of Mother's parental rights based upon a finding of abandonment for failure to visit pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

C.      Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

## III.      STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1)      [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2)      [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV.  DISCUSSION

### A. & B.

In terminating Mother's parental rights based upon the statutory ground of abandonment for failure to visit and remit support, the court considered the four months preceding August 29, 2016, the filing date of the termination petition. The relevant time

period was April 29, 2016, through August 28, 2016.[2]  A parent's willful failure to support "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child."  Tenn. Code Ann. § 36-1-102(1)(D).  Token support is "support, under the circumstances of the individual case, [that] is insignificant given the parent's means."  Tenn. Code Ann. § 36-1-102(1)(B).  A parent's willful failure to visit "means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation."  Tenn. Code Ann. § 36-1-102(1)(E).  Token visitation is "visitation, under the circumstances of the individual case, [that] constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child."  Tenn. Code Ann. § 36-1-102(1)(C).

This court has consistently held that the term willfulness as it applies to a party's failure to visit or remit support must contain the element of intent.  *In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999).  The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code."  *In re Audrey S.*, 182 S.W.3d at 863.  "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent."  *Id.*  "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing."  *Id.* at 863-64.

Mother argues that her failure to remit child support or to visit was not willful because she was in a rehabilitation program during the relevant time period.  She claims that her income was used to pay the cost of the rehabilitation program and that she was unable to visit while in the program.  Mother also alleged in her response to the termination petition that her attempts to visit via Skype were denied.  The record reflects that the court failed to consider the aforementioned facts in making its termination decision, instead focusing upon the fact that support was not remitted and overnight visitation had not occurred.  Accordingly, we vacate the court's finding of abandonment and remand for findings of fact concerning the willfulness of the alleged abandonment.

C.

In the event of further appellate review, we must consider whether termination was in the best interest of the Child.  In making this determination, we are guided by the following non-exhaustive list of factors:

---

[2] "The applicable four month window . . . includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed."  *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014).

(i)     In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[3]

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

---

[3] *In re Kaliyah S.*, 455 S.W.3d at 555 ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

Here, the court's findings focused primarily upon the period of time leading up to the removal and shortly thereafter. While we agree that Mother failed to maintain a relationship with the Child and had not visited the Child or remitted child support during the relevant time period, Mother testified concerning her completion of a rehabilitation program and the establishment of a home and continued stable employment. The record reflects that the court failed to properly consider these factors in its best interest analysis. With these considerations in mind, we vacate the order in its entirety and remand for additional findings of fact.

## V.    CONCLUSION

The trial court's order granting the termination petition is vacated, and the case is remanded for further proceedings consistent with this opinion. Costs of the appeal are taxed one half to the appellant, Amanda D., and one half to the appellees, Michael G. and Shannon G.

_____
JOHN W. McCLARTY, JUDGE