FILED
03/02/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 2, 2019

IN RE TRINITY P.[1]

**Appeal from the Juvenile Court for Hamblen County**
**No. J170016     Janice Hope Snider, Judge**

_____

**No. E2019-01251-COA-R3-PT**

_____

This action involves the termination of a father's parental rights to his minor child. Following a bench trial, the trial court found that clear and convincing evidence existed to establish the statutory ground of abandonment for failure to manifest an ability and willingness to personally assume responsibility of the child. The court also found that termination was in the best interest of the child. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, J.J., joined.

Gerald T. Eidson, Rogersville, Tennessee, for the appellant, Brad P.

Herbert H. Slatery, III, Attorney General & Reporter, and Amber L. Seymour, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

## I.     BACKGROUND

Trinity P. ("the Child") was born to Callie J. ("Mother") in January 2013. Brad P. was listed as the biological father on the Child's birth certificate. In January 2017, the Child, along with her half-siblings, was removed by the Tennessee Department of

_____

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

Children's Services ("DCS") from Mother after she gave birth to a baby boy at 20 weeks gestation in a residence. Mother was impaired from drug use at the time of the baby's birth and refused treatment after she was taken to the hospital. The baby did not survive.

The child and her siblings were placed in a foster home together and then later adjudicated as dependent and neglected. DCS was initially unable to locate Father, who had previously parented the Child in Chicago from August 2013 through summer 2014. Mother believed that Father was in Alabama at the time of removal. DCS located Father in Texas in July 2017. At that time, he indicated his inability to assume responsibility of the Child. DCS developed a permanency plan and provided him with a copy of the Criteria and Procedure for termination of his parental rights. Father communicated with the Child through Facebook video chat and telephone but never visited face-to-face.

DCS filed a petition to terminate Father's parental rights on August 2, 2018, alleging the statutory grounds of abandonment for failure to support and to visit and for failure to manifest an ability and willingness to assume responsibility of the Child.[2] Thereafter, on October 26, 2018, Father was incarcerated in Texas for evading arrest. He was later convicted of domestic assault of a family member, a prior charge, and evading arrest. He received a concurrent sentence of four years for each conviction.

The case proceeded to a hearing on February 22, 2019, at which Father participated via telephone. Father requested a continuance, claiming that he was unable to hear the proceedings. The court denied the motion and conducted the hearing. Despite his alleged inability to hear, Father testified and also voiced his disagreement with some testimony presented by the DCS caseworker, Sabrina Heck.

Ms. Heck testified that she has served as the Child's caseworker since June 2017. She recalled that once she finally located Father, she reviewed the Criteria and Procedure for the Termination of his Parental Rights. She confirmed that he later signed a document indicating his understanding of the same on October 4, 2018, when she visited him in Texas. She mailed a copy of the document, as well as a copy of his permanency plan. She also explained the process of obtaining responsibility of the Child through the Interstate Compact on the Placement of Children ("ICPC") due to his location in Texas. He understood the process but did not want to initiate the procedure.

Ms. Heck stated that Father last spoke with the Child in June 2018. She claimed that he also never remitted child support during the pertinent time period. She stated that Father advised her that he had no intent to complete the permanency plan requirements and that he could not assume responsibility for the Child. She agreed that he later

---

[2] Mother voluntarily surrendered her rights.

indicated intent to complete the permanency plan and begin the ICPC process after the termination petition had been filed. She agreed to assist him in his efforts but admitted that she did not explore services once she learned that he was incarcerated.

Ms. Heck testified that the Child has been in the current foster home for approximately 15 months. She described the Child as happy, outgoing, and well-spoken. She believed the Child was doing well in the home with her siblings. Foster Father confirmed that the Child was well-adjusted in the home. He expressed a desire to adopt her and her siblings. He stated that the Child never speaks of Father and refers to her deceased Stepfather as her father.

Father claimed that he learned of the Child's removal a few days after her removal. His initial attempts to contact DCS were unsuccessful. He denied ever stating that he was unable to care for the Child. He further claimed that he had completed a number of the permanency plan requirements and had a residence and employment prior to his incarceration. He asserted that Ms. Heck advised him that the ICPC process would take some time, delaying the Child's permanency. He stated that his later attempts to contact the Child were blocked by Foster Parents. He asserted that DCS never offered to assist him in coordinating an in-person visit and further advised him that such a visit would be a "waste of [his] time" due to the distance between them. He believed his child support payments were automatically deducted from his paycheck. He stated that he remitted payment when he learned that his support payments were overdue.

Father expressed his love and concern for the Child and stated that he parented her for over a year by himself in Chicago. He asserted that the residence he shares with his current wife when not incarcerated is big enough to accommodate the Child. He claimed that he intended to provide a room for the Child prior to his incarceration.

Ms. Heck testified in rebuttal that she never discouraged Father from visiting and that she advised him that she could provide bus tickets and an extended visitation period for him. She further testified that she advised him concerning the termination criteria approximately six times and that she reviewed every action step of the permanency plan with him and advised him accordingly. She likewise investigated his claim that he was blocked from contacting the Child and confirmed that he was never blocked.

Following the hearing, the trial court granted the termination petition on the sole ground of abandonment for failure to manifest an ability and willingness to assume responsibility of the Child, rejecting the grounds of abandonment for failure to visit and to remit support. The court also found that termination was in the best interest of the Child. This timely appeal followed.

## II.     ISSUES

The issues necessary to our resolution of this appeal are as follows:

A.      Whether the court abused its discretion in the motion to continue.

B.      Whether clear and convincing evidence supports the court's finding of a statutory ground supporting termination pursuant to Tennessee Code Annotated section 36-1-113(g)(14).

C.      Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

## III.     STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

(1)      [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)      [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at \*9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

# IV.    DISCUSSION

## A.

Father claims that his right to participate in the hearing pursuant to Tennessee Code Annotated section 36-1-113(f)[3] was thwarted due to the low audio quality provided by the court. The record belies Father's assertion as evidenced by his interjections during Ms. Heck's testimony and his participation as a witness. Further, the decision whether to grant or deny a motion to continue is a discretionary one. *In re A'Mari B.*, 358 S.W.3d 204, 213 (Tenn. Ct. App. 2011) (citing *State Dep't of Children's Servs. v. V.N.*, 279 S.W.3d 306, 317 (Tenn. Ct. App. 2008)). We hold that the court did not abuse its discretion under the circumstances presented here.

## B.

Father does not appeal the statutory ground supporting the court's termination decision. In such cases, our Supreme Court offered the following instruction:

> [I]n an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal.

*In re Carrington H.*, 483 S.W.3d at 525-26 (internal citation and footnote omitted). Accordingly, we will review the court's findings.

A parent's parental rights may be terminated when the parent "has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child *and* placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child." Tenn. Code Ann. § 36-1-113(g)(14) (emphasis added). While Father expressed a willingness to assume responsibility for the Child at the hearing, his failure to act prior to the filing of the termination petition did not support his claims of readiness. He likewise lacked the ability to care for her once incarcerated. The record further supports a finding that placing her with him, even once he is no longer incarcerated, would pose a risk of substantial harm to her psychological welfare given her

---

[3] "That the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances[.]"

lack of a meaningful relationship with him and her current placement with her siblings in an adoptive home. We affirm the court's finding on this issue.

C.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

> (i)    In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
> > (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> >
> > (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[4]
> >
> > (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> >
> > (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> >
> > (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> >
> > (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

---

[4] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

Here, Father has failed to even visit the Child in person since the time of the removal. Father did not indicate his intent to complete the ICPC process until after the termination petition had been filed. He was incarcerated shortly thereafter. Tenn. Code Ann. § 36-1-113(i)(1), (2). The record is devoid of any evidence establishing that he maintained a meaningful relationship with the Child, who has not seen him in person since before the time of removal. Tenn. Code Ann. § 36-1-113(i)(4). Removing her from her current placement with her siblings and foster parents who wish to adopt them would be detrimental to her emotional well-being. Tenn. Code Ann. § 36-1-113(i)(5). Questions remain as to his ability to provide a safe and stable home for the Child as evidenced by criminal activity and later incarceration. Tenn. Code Ann. § 36-1-113(i)(7), (8). The Child should be allowed to achieve permanency and stability in her current home. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child. We affirm the trial court.

## V. CONCLUSION

The judgment of the trial court is affirmed.  The case is remanded for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, Brad P.

_____
JOHN W. McCLARTY, JUDGE